UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
VJOCA SELMANOVIC, GRACIELA DASILVA and
ROBIN MAX MORRIS,

                    Plaintiffs,


          -against-                          06 Civ. 3046 (DAB)
                                             MEMORANDUM & ORDER



NYSE GROUP, INC., now the owner of the
entity previously known as the NEW YORK
STOCK EXCHANGE, INC., BUILDING MAINTENANCE
SERVICES, LLC, and DOE CORPORATIONS 1-5,

                    Defendants.
--------------------------------------X
DEBORAH A. BATTS, United States District Judge.

     Defendant Building Maintenance Services, LLC ("BMS") moves

to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), the gender

discrimination and retaliation claims brought against it by

Plaintiff Vjoca Selmanovic ("Selmanovic") under Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 and 3 ("Title

VII"), on the grounds that the claims were untimely filed.  In

the event the Court dismisses Selmanovic's Title VII claims, BMS

also moves to dismiss Selmanovic's gender discrimination claims

brought under the Administrative Code of the City of New York, §§

8-107(1)(a) and (7) ("New York City Human Rights Law"), on the

grounds that the Court should decline supplementary jurisdiction

over these state law claims.  Alternatively, if Selmanovic's

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/28/2007

Title VII claims are dismissed, BMS moves to compel Selmanovic to resolve her remaining discrimination claims under state law at arbitration pursuant to a collective bargaining agreement to which Selmanovic's labor union is a party.

For the reasons set forth below, BMS' Motion to Dismiss Selmanovic's Title VII claims against it is GRANTED.  BMS' Motion to Dismiss the New York City Human Rights Law claims against it is also GRANTED.  The Court does not reach BMS' Motion to Compel Arbitration.

## BACKGROUND

The Plaintiffs in this matter worked as porters at facilities operated by Defendant New York Stock Exchange, Inc. ("NYSE").  (Complaint ¶¶ 12, 39 & 64.)  Plaintiff Graciela DaSilva ("DaSilva") "commenced her employment with BMS in March 1997" but was eventually placed on the "NYSE payroll in November 2002."  (Id. ¶ 39.)  BMS "provides cleaning services and cleaning personnel to the NYSE."  (Id. ¶ 7.)  Plaintiff Robin Max Morris ("Morris") began working "with the NYSE as a porter in the Maintenance Facilities Department" in 1981 and eventually was promoted to a supervisor position.  (Id. ¶¶ 64-67.)

Like DaSilva, Plaintiff Selmanovic also began working at NYSE's facilities "when she accepted employment on the payroll of

BMS in August 1997, and worked as a porter solely and entirely
for the NYSE." (Id. ¶ 12.) In contrast to DaSilva, however, who
claims that she was eventually transferred from BMS' payroll to
NYSE's payroll, it appears from the Complaint that Selmanovic was
at all times on the payroll of BMS. Selmanovic nevertheless
alleges that "BMS essentially relinquished control over her
performance, which was assumed by the NYSE . . . so that
Selmanovic reasonably regarded herself to be an employee of the
NYSE and was treated as such by the NYSE and was accepted as a
NYSE employee by all those who had any dealings with her." (Id.
¶ 13.) Although Selmanovic regarded herself to be an NYSE
employee, she also apparently continued to be a BMS employee.
The Complaint alleges that NYSE and BMS "existed in a dual
employment relationship regarding the persons on the BMS payroll
such as Selmanovic who were assigned to and who did work in the
NYSE's facilities." (Id. ¶ 14.) The Complaint thus refers to
both NYSE and BMS collectively as "NYSE". (Id.)

    While all three of the Plaintiffs have brought claims
against NYSE, "the only Plaintiff with a claim against BMS is
Selmanovic, as Plaintiffs DaSilva and Morris were employees only
of the NYSE and had no affiliation with BMS." (Pl. Opp. at 4,
n.1.)

3

The Plaintiffs' gender discrimination and retaliation claims arise from the alleged failure of NYSE and BMS to "remedy the sexually harassing and retaliatory hostile environment that existed in the NYSE facilities" where the Plaintiffs worked. (Id. ¶ 9.)  The source of the sexual harassment at the NYSE facilities allegedly was an individual named Alexis Camarena ("Camarena") who "served as a porter in the NYSE facilities with Selmanovic, was promoted to the supervisory position of 'Lead Porter,' and had supervisory authority over Selmanovic, as well as other porters, and was an employee of the NYSE."  (Id. ¶ 16.) The Complaint alleges numerous instances of egregious forms of sexual harassment by Camarena directed towards Selmanovic (Id. ¶ 18) and DaSilva (Id. ¶¶ 45-47 & 50).  The Plaintiffs allege that NYSE was aware of Camarena's gross conduct but did nothing to redress or prevent it.  (Id. ¶ 29.)

Selmanovic repeatedly complained about Camarena's offensive conduct towards her to Max Morris "who was Camarena's supervisor, and who actually observed some of Camarena's conduct."  (Id. ¶ 20.)  Although "Morris reported Selmanovic's complaint to his own manager" at NYSE, "the NYSE ignored the complaints Morris reported."  (Id.)  Selmanovic alleges that instead of disciplining Camarena, NYSE actually promoted him.  (Id. ¶ 21.) On April 4, 2003, "and several rimes thereafter, Selmanovic,

along with co-Plaintiff [DaSilva] complained to the NYSE's Human
Resources Department regarding the sexual harassment."  (Id. ¶
23.)  NYSE's Human Resources Department, however, refused to
effectively respond to the complaints and allegedly engaged in "a
vicious pattern of retaliation and intimidation" against
Selmanovic and DaSilva for having raised their complaints.  (Id.
¶¶ 27-28.)  The Complaint does not contain any specific
allegations that Selmanovic complained to any supervisors or
managers at BMS about Camarena's sexually harassing conduct.

       Selmanovic and DaSilva filed charges with the Equal
Employment Opportunity Commission ("EEOC") on August 31, 2003
"along with a supplemental charge filed on December 31, 2003"
alleging the NYSE was engaging in gender discrimination and
retaliation.  (Id. ¶ 27.)  BMS contends that the "EEOC issued a
Dismissal and Notice of Rights . . . finding no probable cause
against BMS" on September 22, 2005.  (Def. Mot. Dismiss at 3 &
Sigda Aff. at Ex. 3.)  Selmanovic does not deny this.  (Pl. Opp.
at 4-5.)

       The September 22, 2005 Dismissal and Notice of Rights
informed Selmanovic that the reason the EEOC was closing its file
on the charge made against BMS was that "Based upon its
investigation, the EEOC is unable to conclude that the
information obtained establishes violations of the statutes."

(Sigda Aff. at Ex. 3.)  Selmanovic was further advised by the
Dismissal and Notice of Rights that any lawsuit she might wish to
file against BMS under Title VII had to be filed within 90 days
of her receipt of the Notice.  (Id.)  Selmanovic did not file
suit against BMS until April 20, 2006, when the instant Complaint
was filed.  It is therefore undisputed that Selmanovic did not
file suit within 90 days of receiving the September 22, 2005
Dismissal and Notice of Rights regarding BMS.

The EEOC dismissed the discrimination charge brought against
BMS "while the conciliation process between Selmanovic and the
NYSE continued."  (Pl. Opp. at 5.)  Ultimately, this conciliation
process was unsuccessful and "the EEOC issued a right-to-sue
letter against the NYSE on March 28, 2006."  (Id.)  As BMS
cogently points out, however, after September 22, 2005, it "was
not involved in the EEOC conciliation process, as the EEOC had
already dismissed the charge against BMS."  (Def. Reply at 3.)


## DISCUSSION

A.  Legal Standard for Motion to Dismiss

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)
the Court "must accept as true the factual allegations in the
complaint, and draw all reasonable inferences in favor of the
plaintiff."  Bolt Elec. v. City of New York, 53 F.3d 465, 469 (2d

Cir. 1995) (citations omitted). "The district court should grant such a motion only if, after viewing the plaintiff's allegations in this favorable light, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999). A court does not, however, have to accept as true "conclusions of law or unwarranted deductions of fact." First National Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994), cert. denied, 513 U.S. 1079 (1995).

B.   Selmanovic's Title VII Claims Against BMS

An employment discrimination complaint under Title VII must be filed in district court within 90 days after a plaintiff receives notice of final action by the EEOC, commonly referred to as a "right-to-sue" letter. 42 U.S.C. § 2000e-5(f)(1); 42 U.S.C. § 12117(a); see also Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir. 1994) (Title VII suit "must be commenced not more than 90 days after receipt of the right-to-sue letter"). As discussed above, it is undisputed that Selmanovic failed to file her Title VII claims against BMS within 90 days of receiving the EEOC's September 22, 2005 Dismissal and Notice of Rights regarding BMS.

In defense of her untimely Title VII claims against BMS, Selmanovic contends that she "did not bring suit against BMS

7

during the conciliation process because that would have frustrated, and been contradictory to, the EEOC's efforts to resolve these claims without litigation." (Pl. Opp. at 6.) Selmanovic further argues that "given the closely integrated economic relationship between BMS and the NYSE, the right-to-sue against the NYSE should properly be imputed to BMS." (Id.)

While it is settled that the 90 day deadline to file Title VII claims is not a jurisdictional prerequisite, the deadline nevertheless effectively functions as a statute of limitations. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 121 (2002); Johnson v. Al Tech Specialties Steel Corp., 731 F.2d 143, 146 (2d Cir. 1984). The courts have recognized that the "remedial purpose of the [civil rights] legislation as a whole" would be defeated if aggrieved plaintiffs were absolutely barred from pursuing judicial remedies by reason of excusable failure to meet the time requirements. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 398 (1982). Equitable tolling of the 90 day filing requirement is, however, applied only in a narrow set of circumstances:

> Federal courts have typically extended equitable relief only
> sparingly. We have allowed equitable tolling in situations
> where the claimant has actively pursued his judicial
> remedies by filing a defective pleading during the statutory
> period, or where the complainant has been induced or tricked
> by his adversary's misconduct into allowing the filing
> deadline to pass. We have generally been much less

forgiving in receiving late filings where the claimant
failed to exercise due diligence in preserving his legal
rights.

Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)

(footnotes and citations omitted).  The Supreme Court has further

admonished that "[p]rocedural requirements established by

Congress for gaining access to the federal courts are not to be

disregarded by courts out of a vague sympathy for particular

litigants."  Baldwin County Welcome Center v. Brown, 466 U.S.

147, 152 (1984); see also Johnson v. Al Tech Specialties Steel

Corp., 731 F.2d 143, 146 (2d Cir. 1984) ("[I]n the absence of a

recognized equitable consideration, the court cannot extend the

limitations period by even one day").

Thus, the 90 day time limit ought to be tolled only for

reasons such as "(1) the claimant received inadequate notice, (2)

there is a pending motion for appointment of counsel, (3) the

Court misled the plaintiff and as a result the plaintiff believed

he had done everything required of him, or (4) the defendant

engaged in affirmative misconduct, encouraging the plaintiff to

take no action."  Rosquist v. NYU Med. Ctr., 1998 WL 702295, at

*5 (S.D.N.Y. 1998), aff'd, 199 F.3d 1323 (2d Cir. 1999) (citing

Baldwin County, 466 U.S. at 151).  The reasons that Selmanovic

provides for failing to file her Title VII claims against BMS in

9

a timely fashion do not fall within the narrow set of
circumstances that could justify equitable tolling of the 90 day
filing requirement.

Selmanovic relies on Streeter v. Joint Indus. Bd. Of
Electrical Indus., 767 F.Supp 520, 524 (S.D.N.Y. 1991)(citing
Kaplan v. International Alliance of Theatrical and Stage
Employees, 525 F.2d 1354, 1358-59 (9th Cir. 1975); Chung v.
Pomona Valley Community Hospital, 667 F.2d 788, 792 (9th Cir.
1982), for the proposition that "[w]here two or more defendants
are closely related entities, an administrative charge and right
to sue notice against one defendant may be sufficient to provide
notice to the other defendants and thus satisfy the
administrative filing requirements."  In that case, the issue
before the court was whether co-plaintiffs can "sue defendants
who were named by neither plaintiff in her administrative
complaint, but who are allegedly related to respondents named in
that complaint."  Id.  Two of the defendants argued that the
"court does not have subject matter jurisdiction over plaintiffs'
Title VII claims because they were not named as respondents in
either plaintiff's administrative complaint."  Id. The court
held that it would defer deciding on this issue until the
proceedings had reached the summary judgment stage.  Id. at 525.

10

Here, by contrast, Selmanovic had specifically named BMS in her administrative complaint to the EEOC.  Significantly, the plaintiffs in Streeter had argued "that they should be relieved of the administrative filing requirement as to the [two defendants] because they were unaware that [they] were responsible parties."  Id. at 525 n.5.  Selmanovic, on the other hand, was obviously aware that BMS might be liable to her under Title VII since at least 2003, when she filed her complaint with the EEOC.  The holding in Streeter upon which Selmanovic would rely simply does not apply in this instance.

Accordingly, because Selmanovic's Title VII claims against BMS were untimely filed and because there is no basis for equitable tolling of the 90 day filing period, BMS' Motion to Dismiss the Title VII claims against it is GRANTED.

C.   Supplemental Jurisdiction Over the New York City Human
     Rights Law Claims Against BMS

Where a case is properly before a federal district court on the basis of federal question jurisdiction, the court has supplemental jurisdiction over "all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  The district court, however,

11

may decline to exercise supplemental jurisdiction over a claim if
(1) the claim raises novel or complex issues of state law, (2)
the state law claim "substantially dominates" over the federal
claim, (3) the district court has dismissed all federal claims,
or (4) there are other compelling reasons or exceptional
circumstances that would justify declining jurisdiction.   28
U.S.C. § 1367(c)(1)-(4).

      BMS contends that "there are exceptional circumstances to
decline supplemental jurisdiction" over Selmanovic's remaining
claims against it pursuant to 28 U.S.C. § 1367(c)(4), arguing
essentially that "Selmanovic should not now be rewarded for
failing to bring [her Title VII claims] within the applicable
limitations period."   (Def. Reply at 4.)   BMS also argues that it
has "nothing to do with the claims of the other two plaintiffs."
(Id.)

      The Court is indeed concerned that the Complaint contains
only the most generalized allegations against BMS.   As Selmanovic
herself admits, she is the only Plaintiff with any claims against
BMS "as Plaintiffs DaSilva and Morris were employees only of the
NYSE and had no affiliation with BMS."   (Pl. Opp. at 4, n.1.)
Further, while the Complaint specifies that Selmanovic and
DaSilva caused their supervisors at NYSE and the Human Resources
Department of NYSE to become aware of Camarena's alleged sexual

                              12

harassment, (Complaint ¶¶ 20 & 23), there is no allegation that BMS' management was so notified.  Notwithstanding that the Complaint styles "NYSE" generically to mean both NYSE and BMS, the substantive allegations supporting Selmanovic's Title VII and New York City Human Rights Law claims exclusively refer to her NYSE supervisors (Id. ¶ 20), NYSE's Human Resources Department (Id. ¶ 23-24), NYSE managers' alleged failure to appropriately respond to her complaints (Id. ¶ 25), NYSE's alleged condonation of sexual harassment in the workplace (Id. ¶¶ 26 & 29) and NYSE's alleged retaliation against her (Id. ¶ 28).  In context, it is clear that the specific allegations just referenced are made only with respect to NYSE.  (See Id. ¶¶ 6-8; Pl. Opp. at 4, n.1; Sigda Aff. at Ex. 3.)

Given the vagueness of the allegations against BMS and considering that Selmanovic's federal claims against BMS have been dismissed for failure to file in a timely fashion, the Court finds that there is compelling reason for it to decline exercising supplemental jurisdiction over Selmanovic's remaining state law claims against BMS.  Accordingly, BMS' Motion to Dismiss Selmanovic's New York City Human Rights Law claims is GRANTED.  The New York City Human Rights Law claims against BMS are DISMISSED WITHOUT PREJUDICE.

13

LEAVE TO AMEND

Rule 15(a) of the Federal Rules of Civil Procedure requires
that courts freely grant leave to amend "when justice so
requires."  Fed. R. Civ. P. 15(a).  "[I]t is the usual practice
upon granting a motion to dismiss to allow leave to replead."
Cohen v. Citibank, 1997 WL 88378 at *2 (S.D.N.Y. 1997).  Absent a
showing of undue delay, bad faith or dilatory motive on the part
of the movant, undue prejudice to the opposing party, or the
futility of the amendment, a plaintiff should be granted leave to
replead.  See Protter v. Nathan's Famous Sys., Inc., 904 F.Supp.
101, 111 (E.D.N.Y. 1995) (citing Foman v. Davis, 371 U.S. 178,
182 (1962)).

However, if an amendment would be futile, a court may deny
leave to amend.  See Oneida Indian Nation of N.Y. v. City of
Sherrill, 337 F.3d 139, 168 (2d Cir. 2003) (citing Foman v.
Davis, 371 U.S. 178, 182 (1962)).  "A proposed amendment to a
pleading would be futile if it could not withstand a motion to
dismiss pursuant to Rule 12(b)(6)."  Id. (citing Ricciuti v.
N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)).

It is clear that Defendants NYSE and BMS stand in different
postures vis-à-vis the three Plaintiffs.  As discussed above, the
Complaint is far too vague and general with respect to the
remaining New York City Human Rights Law claims against BMS.  It

14

would be premature, however, to conclude that Plaintiffs could

not adequately plead such claims against BMS.   Therefore,

Plaintiffs are GRANTED leave to amend the Complaint, within (30)

days of the date of this Memorandum and Order, by setting forth

with particularity, allegations that would support possible

claims against BMS under the New York City Human Rights Law.

### CONCLUSION

For the foregoing reasons, BMS' Motion to Dismiss the Title

VII claims and the New York City Human Rights Law claims against

it are both GRANTED.   The New York City Human Rights Law claims

against BMS are DISMISSED WITHOUT PREJUDICE.   Plaintiffs,

however, are GRANTED leave to amend the Complaint within thirty

(30) days of the date of this Memorandum and Order, but only as

to possible New York City Human Rights Law claims against BMS.

SO ORDERED.

Dated:     New York, New York
           March 28   , 2007          Deborah a. Batts
                                          Deborah A.  Batts
                                    United States District Judge

15